**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Coordination Proceeding Special Title (Rule 3.550)<br><br>CITIZENS AUTOMOBILE FINANCE, REES-LEVERING CASES<br><br>INCLUDED ACTIONS:<br><br>Aguilar v. Citizens Automobile Finance, Inc.<br><br>Canton v. Citizens Automobile Finance, Inc.<br><br>Owens v. RBS Citizens, N.A. | No.  C 10-05345 JSW<br><br>**ORDER DENYING MOTION TO REMAND** |

**INTRODUCTION**

This matter comes before the Court upon consideration of the Motion to Remand filed by Plaintiffs, Jesus Aguilar, Hugo Canton, and Gregory Owens (collectively "Plaintiffs"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and finds the matter suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). The Court VACATES the hearing set for February 25, 2011, and the Court DENIES Plaintiffs' motion.

**BACKGROUND**

Plaintiffs are California residents who each purchased a car or truck for their personal use under a retail sale installment contract. (*See* Declaration of Christian Schreiber ("Schreiber Decl."), Ex. A (Canton Complaint ¶¶ 1, 6), Ex. B (Aguilar Complaint ¶¶ 3, 10), Ex. C (Owens Cross-Complaint ¶¶ 2, 8); Declaration of Raymond Y. Kim in Support of Notice of Removal

("Kim Removal Decl."), Ex. B (Consolidated Amended Complaint ("CAC") ¶¶ 2-4, 12-13, 19, 26).)

According to Plaintiffs, each of their sales contracts are governed by California's Rees-Levering Automobile Sales Finance Act, California Civil Code § 2981, *et seq.* ("Rees-Levering Act"). (*See* Canton Complaint ¶¶ 6-9; Aguilar Complaint ¶ 10; Owens Cross-Complaint ¶ 8.) Plaintiffs allege that the Defendants, Citizens Automobile Finance, Inc. ("CAFI") and RBS Citizens, N.A. ("RBS") (collectively "Defendants"), repossessed each of their vehicles and used a standard form "Notice of Intent ("NOI")" that did not comply with the Rees-Levering Act. As a consequence, Plaintiffs allege that they were not liable for any deficiency balance after their cars were repossessed.[1] (Canton Complaint ¶¶ 6-12, 14; Aguilar Complaint ¶¶ 2, 10-13; Owens Cross-Complaint ¶¶ 1, 8-11; CAC ¶¶ 1, 15-32.)

Mr. Canton and Mr. Aguilar specifically alleged that the amount in controversy was less than $5,000,000. In addition, in the CAC, Plaintiffs specifically alleged that the aggregate amount in controversy was less than $5,000,000. (*See* Canton Complaint ¶ 15; Aguilar Complaint ¶ 9; CAC ¶ 11.)[2] In their prayer for relief, Plaintiffs sought, *inter alia*,: (1) restitution in amount "at least equal to all sums collected for alleged deficiency balances;" (2) an order requiring the Defendants to "send a letter to each of the credit reporting agencies instructing them to correct the credit reports of class members, including the deletion of any reference to deficiency balances allegedly owed and/or to *charge offs* of such balances;" and (3) compensatory damages in an amount "at least equal to all sums paid by Plaintiffs and members of the class for alleged deficiency balances following the disposition of repossessed motor vehicles." (CAC, Prayer for Relief, ¶¶ 4-6 (emphasis added).)

---

[1]  Mr. Aguilar filed suit against CAFI in Alameda County Superior Court on October 16, 2009. Mr. Canton filed suit against CAFI in Orange County Superior Court on May 20, 2009. On July 30, 2009, RBS filed suit in Orange County Superior Court against Mr. Owens to collect a deficiency balance. Mr. Owens filed a class action cross-complaint against RBS on November 20, 2009. The three cases were eventually coordinated before Judge Stephen Brick of the Alameda County Superior Court. (*See* Notice of Removal, ¶¶ 4-7.) On July 6, 2010, Plaintiffs filed the CAC, in which they assert claims for: (1) Violations of the Rees-Levering Act; (2) Breach of Contract; (3) Violations of California Business and Professions Code §§ 17200, *et seq.*; and (4) Declaratory Relief.

[2]  Mr. Owens' Cross-Complaint is silent as to the amount in controversy.

2

1 On August 26, 2010 and August 27, 2010, Defendants served responses to Plaintiffs' Special Interrogatories, in which they stated that they had identified approximately 1,400 potential class members, that the total dollar amount of outstanding deficiency balances owed is $28 million, and that the total amount of deficiencies collected is $1.2 million. (Schreiber Decl., ¶¶ 6-7, Exs. D-G (Special Interrogatories 4-7 and Responses thereto).)

On September 14, 2010, Defendants served discovery requests on Plaintiffs, in which they sought information relating to the amounts Plaintiffs might seek in restitution and whether Plaintiffs sought to have outstanding deficiency balances "charged off." (Declaration of Raymond Y. Kim in Opposition to Motion to Remand ("Kim Opp. Decl."), Exs. A-B.) On October 21, 2010, Plaintiffs served objections and responses to the discovery requests. In their responses to Defendants' special interrogatories, Plaintiffs stated that they were seeking restitution for deficiency balances collected by Defendants, that they could not provide a specific dollar amount for the amount they sought, but that they had "no information to suggest that Defendants have collected deficiency balances in amount anywhere near $5,000,000." (*See* Kim Opp. Decl., Exs. C-E (Special Interrogatories 1-4, 9 and Responses thereto).)

Plaintiffs did not provide Defendants with any specific information regarding their views of the total amount of outstanding deficiency balances, including the $28 million figure identified by Defendants, and they took issue with Defendants' definition of the term "charge-off." (*Id.*, Exs. C-E (Special Interrogatories 5-8 and Responses thereto); Exs. F-H (Requests for Admission and Responses thereto).) On October 21, 2010, Defendants' counsel sent an email to Plaintiffs counsel in an effort to meet and confer about Plaintiffs' responses, and to further explain Defendants' intended use of the term "charge-off." (*Id.*, Ex. I.)

On October 28, 2010, Plaintiffs' counsel responded via email and advised Defendants' counsel that the Plaintiffs did not "pray that Defendants charge off the contested balances," but rather that the Plaintiffs asked that "Defendants be ordered to communicate to the credit bureaus in order to instruct the bureaus to delete references to balances that Defendants have charged off." (*Id.*, Ex. J.) Plaintiffs' counsel then stated:

> The gravamen of Plaintiffs' Complaint is that the purported 'debts' are unlawful insofar as that when a defendant fails to comply with Civil Code

3

1  section 2983.2, no deficiency is due and there is, therefore, no debt to
2  collect or charge off. Hence, the intent of the prayer is that Defendants be ordered to correct whatever wrongful reporting of alleged deficiency debts has occurred, regardless of whether Defendants have reported an existing
3  debt or have reported that an alleged debt has been charged off.

4  *Though Defendants have misread the prayer in Plaintiffs' [CAC] and propounded needless discovery to confirm this error, Defendants'*
5  *discovery is also improper inasmuch as it ostensibly seeks to "confirm" what is already in the Complaint, and has been known to Defendants for*
6  *months.*

7  (*Id.*, Ex. J (emphasis added).)

8  On November 24, 2010, based on this email, Defendants removed the action to this

9  Court. (Notice of Removal, ¶¶ 10, 21, 23.)

10  **ANALYSIS**

11  **A.   Applicable Legal Standards.**

12  "[A]ny civil action brought in a State court of which the district courts of the United

13  States have original jurisdiction, may be removed by the defendant ... to the district court of the

14  United States for the district and division embracing the place where such action is pending."

15  *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 7-8 (1983) (citation

16  omitted); see also 28 U.S.C. § 1441. However, federal courts are courts of limited jurisdiction.

17  *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly,

18  the burden of establishing federal jurisdiction for purposes of removal is on the party seeking

19  removal, and the removal statute is strictly construed against removal jurisdiction. *Lewis v.*

20  *Verizon Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010); *Valdez v. Allstate Ins. Co.*, 372

21  F.3d 1115, 1117 (9th Cir. 2004). "Federal jurisdiction must be rejected if there is any doubt as

22  to the right of removal in the first instance." *Gaus v. Miles, Inc*., 980 F.2d 564, 566 (9th Cir.

23  1992).

24  **B.   Plaintiffs' Motion is Denied.**

25  Plaintiffs argue that Defendants failed to remove this action within the time limits

26  permitted by 28 U.S.C. § 1446(b).

27  The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise,
28  of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.] ...

4

> *If the case stated by the initial pleading is not removable*, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable[.]

28 U.S.C. § 1446(b) (emphasis added) (hereinafter "Section 1446(b)").

Under Section 1446(b), there are "two thirty-day windows during which a case may be removed - during the first thirty days after the defendant receives the initial pleading or during the first thirty days after the defendant receives a paper 'from which it may first be ascertained that the case is one which is or has become removable' if 'the case stated by the initial pleading is not removable.'" *Harris v. Bankers Life and Casualty Co.*, 425 F.3d 689, 692 (9th Cir. 2005) (quoting Section 1446(b)).[3]

Defendants removed this action on the basis that Plaintiffs' October 28, 2010 email was the first time they were made aware to a legal certainty that subject matter jurisdiction exists under the Class Action Fairness Act ("CAFA").[4] CAFA provides that district courts have original jurisdiction over any class action in which (1) the amount in controversy exceeds five million dollars, (2) any plaintiff class member is a citizen of a state different from any defendant, (3) the primary defendants are not states, state officials, or other government entities against whom the district court may be foreclosed from ordering relief, and (4) the number of plaintiffs in the class is at least 100. 28 U.S.C. §§ 1332(d)(2), (d)(5).[5]

//
//
//

---

[3] The Court shall hereinafter refer to these windows as the "first thirty-day window," and the "second thirty-day window," respectively.

[4] In the Ninth Circuit, when a plaintiff pleads damages in an amount less than CAFA's jurisdictional amount, a defendant bears the burden of showing "to a legal certainty" that the amount in controversy exceeds $5,000,000. *Lowdermilk v. U.S. Bank Nat'l Assn.*, 479 F.3d 994, 1000 (9th Cir. 2007).

[5] The parties do not question whether the requisite diversity of citizenship exists among the parties or whether the requisite number of class members exist. The focus of their dispute pertains to the timeliness of removal with respect to Defendants' purported knowledge of the jurisdictional amount in controversy.

5

### 1. Plaintiffs' Initial Pleadings and the CAC Did Not Trigger the First Thirty-Day Window.

In *Harris*, the Ninth Circuit held that the first thirty-day window begins to "'run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face' the jurisdictional facts necessary for federal court jurisdiction." *Id.* at 691 (quoting *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992)); *see also id.* at 694 ("removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry"). Plaintiffs seek declaratory relief, and they contend that they and members of the class "are not liable for any deficiency balances following disposition of their repossessed motor vehicles." (CAC ¶ 83.) Plaintiffs argue that these and similar allegations, would have provided Defendants with notice of the potential value of the amount in controversy. *See Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.").

However, Mr. Canton and Mr. Aguilar both expressly alleged either that the aggregated amount of claims or the aggregate amount in controversy did not exceed $5,000,000. (Canton Complaint ¶ 15; Aguilar Complaint ¶ 9.) In addition, in the CAC, Plaintiffs also expressly alleged that the aggregate amount in controversy is less than $5,000,000. (CAC ¶ 11.) By using the "amount of claims" and "amount in controversy," Plaintiffs alleged that the amount in controversy as to all forms of relief was less than CAFA's jurisdictional amount. *Cf. Castillo v. Apple Core Enters., Inc.*, 2009 WL 2849124 at *1-*2 (S.D. Cal. Sept. 1, 2009) (complaint alleged that "the amount in controversy does not reach or exceed Five Million Dollars"); *Green v. Staples Contract & Commercial, Inc.*, 2008 WL 5246051 at *3 (C.D. Cal. Dec. 10, 2008) (applying legal certainty standard where plaintiff limited "'aggregate claim' to less than $5 million, which includes all possible forms of relief, and not just damages"); *Tate v. U.S. Bank Nat'l Ass'n*, 2007 WL 1170608 at *4-*5 (D. Or. April 17, 2007) (applying legal certainty standard where plaintiff alleged that "the aggregate of claims" did not exceed five million

1  dollars). Therefore, the four corners of the individual complaints and the CAC did not
2  demonstrate that the case was removable, and these documents did not trigger the first-thirty
3  day window. *See Lowdermilk*, 479 F.3d at 998; *Harris*, 425 F.3d at 694..

**2.    The October 28, 2010 Email Did Trigger the Second Thirty-Day Window.**

The Court next examines whether the October 28, 2010 email qualifies as "other paper" that triggered the running of the second thirty-day window. Plaintiffs argue that it is not, because the email does not contain any - let alone new - jurisdictional facts and merely restates the information contained in their various complaints. Therefore, Plaintiffs argue that in light of their discovery responses and the pleadings, Defendants should have known that this case was removable by August 2010 at the latest.[6]

In the *Harris* case, *supra*, the plaintiffs named two defendants, Kenneth Brown ("Brown") and Bankers Life and Casualty Company ("Bankers"). Although Bankers and the plaintiff were not citizens of the same state, the plaintiff did not allege Brown's citizenship. Therefore, it was not evident from the four corners of the complaint that complete diversity existed. *Harris*, 425 F.3d at 691, 693. As the trial date approached, the plaintiffs had not yet dismissed or served Brown. Accordingly, Bankers moved to continue the trial. Plaintiff sent a letter to Bankers' counsel, in which he expressed "opposition to any efforts to continue the trial date." *Id.* at 691. Bankers concluded from this communication that the plaintiff had abandoned his claim against Brown, because if he had not, the parties could not meet the pending deadlines. *Id.*

Shortly after receiving this letter, Bankers' counsel wrote again to plaintiff's counsel and asked whether he intended to pursue service against Brown. Plaintiff's counsel did not respond, and Bankers removed the case to federal court on the basis that Plaintiff's letter opposing any continuance of the trial date first put Bankers on notice that complete diversity existed. *Id.* at 691-92. Notably, before the Defendants removed, the plaintiff never expressly

---

[6] To the extent Plaintiffs' argue that Defendants' responses to Plaintiffs' discovery requests provided a basis for removal, those responses do not qualify as "other paper," under Section 1446(b). *See, e.g., Rossetto v. Oaktree Capital Management, Inc.*, 664 F. Supp. 2d 1122, 1129 (D. Hawai'i 2009) ("The document that triggers removal cannot be one created by the defendant.").

7

stated that he had abandoned his claims against Brown, even in the face of a direct inquiry from Bankers. The Ninth Circuit rejected the plaintiff's argument that the notice of removal was untimely, and found that "the case became removable on October 21, 2003," the date on which plaintiff sent his letter to Bankers opposing the continuance, "when it became apparent that Harris had abandoned his claims against Brown." *Id.* at 696.

As in *Harris*, the Plaintiffs have not directly responded to Defendants' discovery request regarding the total amount of deficiency balances that Defendants have assessed, which Defendants attest are $28 million.[7] However, in the October 28, 2010 email, Plaintiffs also state that Defendants' discovery requests, which ask the Plaintiffs to admit to figures quoted by the Defendants, are "improper inasmuch as [they] ostensibly seek to 'confirm' what is already in the Complaint, and has been known to Defendants for months." (Kim Opp. Decl., Ex. J.) The Court finds that an objectively reasonable inference to be drawn from this email is that Plaintiffs were confirming that the amount in controversy could exceed CAFA's jurisdictional minimum.

Accordingly, the Court finds that the October 28, 2010 email qualifies as "other paper from which it may first be ascertained that the case is one which is or has become removable." Thus, Defendants' Notice of Removal was timely, and Plaintiffs' motion to remand is DENIED.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to remand is DENIED. Because the Court has denied the motion, their request for attorneys' fees is DENIED AS MOOT. The parties shall appear, as scheduled, on March 25, 2011 for the Initial Case Management Conference.

**IT IS SO ORDERED.**

Dated: February 22, 2011

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

---

[7] At the same time, with the exception of the allegations in their complaints and the CAC, Plaintiffs also have not specifically stated that they will not seek relief in excess of CAFA's jurisdictional minimum.

8